GEORGE E. STEEL et al., Plaintiffs, *v.* WASHINGTON F. NORTON et al., Defendants.*

(Supreme Court, Suffolk Special Term, December, 1916.)

*Partition — division by commissioners of strip of land on Great South Beach into lots certain of which were set apart to " unknown owners "— jurisdiction acquired by publication of notice under a statute in force in 1878 — attack upon jurisdiction of court in previous action on the ground that the statute under which notice of publication was made was unconstitutional.*

ACTION in partition.

---

* Affirmed by the Appellate Division, Second Department, January, 1919, 182 App. Div. 903.— [REPR.

Gilbert Ray Hawes, for plaintiffs.

William J. Nicoll, for defendants.

KELLY, J. In this action the plaintiffs and the defendants, other than the Sammis executors and Atlantic Beach Realty Company, assert the right to partition lot 49 on the map made by the commissioners appointed by the judgment in the partition action of *Greene* v. *Sammis,* on March 19, 1878. The property affected by that partition action comprised a strip of land on the Great South Beach, not the entire beach but a considerable portion of it. The commissioners appointed to make actual partition divided it into lots and set the lots apart to various ownerships determined in the action. Lot 49 was set apart to David S. S. Sammis, deceased, and title subsequently vested in the defendant Atlantic Beach Realty Company. Certain of the lots were set off to " unknown owners."

The plaintiffs and the defendants named object that jurisdiction was not acquired in the action of *Greene* v. *Sammis* over their ancestors and predecessors in title, who they say, were owners of undivided shares in the property, and they therefore bring this action, some thirty-five or more years after the entry of the final judgment in *Greene* v. *Sammis* on September 18, 1878.

While the case at bar only affects one of the lots (lot 49) affected by the old judgment, the court is advised that similar actions have been commenced affecting the entire tract partitioned in *Greene* v. *Sammis.*

During the thirty-eight years since 1878 the property affected by the decree in *Greene* v. *Sammis* has passed into the hands of many different owners and especially during the last ten years the Great South Beach has been developed over the territory affected and cottage settlements have sprung up such as Point

of Woods, Saltaire, Water Island and other similar localities. The plaintiffs' claims affect all this property. Money has been invested on the strength of the validity of the old decree and many people, strangers to the proceeding, have located along the beach. While it is true that owing to the nature of the land, adverse possession for twenty years is not pleaded or proved, the case of the plaintiffs and the defendants in sympathy with them is peculiar in the fact that it is not asserted that they or their ancestors or predecessors in title ever asserted any right in the beach, although they all lived in the vicinity. Their rights, if they have any, depend on certain old unrecorded deeds, dating some of them back over one hundred years, and which were discovered at a comparatively recent date by Mr. Conklin of Freeport in a secret drawer in a desk belonging to his father or grandfather. So far as appears none of these ancestors or predecessors in title knew that they had any interest in Great South Beach. That there were "unknown owners" of Great South Beach at the date of the partition in *Greene* v. *Sammis*, 1871–1878, must be conceded. It is claimed that the plaintiffs' attorney, Mr. James H. Stanbrough, now deceased, formerly a well-known lawyer in Suffolk county residing in Smithtown, should have known who these "unknown owners" were, although the owners themselves did not know it, and that this affidavit upon which an order of publication of notice was obtained was not sufficient to confer jurisdiction on the court to make the order for publication of the notice to bring them in. There are also criticisms on the form of the notice, and its publication. If the court acquired jurisdiction of the ancestors and predecessors in title of the plaintiffs and the defendants in accord with them, they have no right to maintain this action.

I have carefully examined the briefs submitted by the learned counsel for the parties, and the proceed-

ings in *Greene* v. *Sammis*. A large part of the briefs is occupied in discussing the various interests of the parties now before the court, and the devolution of title, and the sufficiency and effect of these old deeds. But, as suggested, the crucial question is, whether the court obtained jurisdiction over the unknown owners in *Greene* v. *Sammis*. If jurisdiction was obtained, it is idle to go into the various questions of ownership, etc., presented by the deeds, wills, etc.

The question involved is interesting and important, but if there is to be any stability in real estate titles, this would appear to be an extreme case, where title to an entire tract of land, miles in extent, is sought to be overturned nearly forty years after a partition decree which had been accepted in the meantime as the basis of all title in the locality, and this attack is based upon deeds and papers which never saw the light of day for thirty-five years after the final decree settling the title, and the existence of which was unknown to the ancestors and predecessors of the parties now before the court.

In partition actions it must often happen that the transfer and disposition of real estate will come to a standstill unless some means is provided for caring for the interests of the owners of undivided shares in the real estate whose identity and whereabouts cannot be ascertained. This is not an unusual situation, and the law has always sought to provide a method by which such interests may be protected, and still allow title to the land to pass.

In the case at bar a substantial allotment of land was made for the benefit of the persons interested in the beach whose identity was unknown.

I think the court acquired jurisdiction of the unknown owners, the ancestors and predecessors of the plaintiffs and the defendants now attacking the decree in *Greene* v. *Sammis*. The jurisdiction was acquired by the publication of the notice required by

the Revised Statutes, as amended by Laws of 1831, chapter 200, and Laws of 1842, chapter 277.

In 1871, at the date of the commencement of the partition of *Greene* v. *Sammis,* section 448 of the Code of Procedure had been enacted and was in force. It was there provided that " the provisions of the Revised Statutes relating to the partition of lands, tenements and hereditaments, held or possessed by joint tenants, or tenants in common, shall apply to actions for such partition brought under this act, so far as the same can be so applied to the substance and subject of the action, without regard to its form."

It was held in *Sandford* v. *White,* 56 N. Y. 359, that the provisions of the Revised Statutes applicable to partition actions in the former Court of Chancery were continued in effect with relation to such actions in the Supreme Court by virtue of the provisions of section 448 of the Code of Procedure cited above, notwithstanding the abolition of the Court of Chancery by the Constitution of 1847.

The learned counsel for the parties attacking the decree in *Greene* v. *Sammis* present various arguments against the procedure adopted in that case. It is said that the affidavit upon which the order of publication was granted is insufficient, because it states simply conclusions and does not give details, etc. The only requisite averment under the statute as I read it, is that there are unknown owners, persons entitled to some interest in the property who are unknown, and that " proof by affidavit " of this fact must be submitted to the court. If such averment was made, if proof by affidavit was submitted, the court had the necessary jurisdiction to make the order for publication of the notice and it cannot be attacked collaterally, even though now, in 1916, we may think the proof should have been stronger or more details given. If there was proof, and it was satisfactory to the judge who signed the orders it was sufficient. *Kennedy* v.

*Lamb,* 182 N. Y. 228. It will be noted that there is no requirement in the statute that the affidavit should show the method by which the affiant reaches the conclusion that there were unknown owners. Such provisions are in our present day statutes with reference to parties known, and who cannot be served within the state. Effort to serve the process must be shown and it is not sufficient to allege " diligent effort," without the details. *Kennedy* v. *Lamb, supra.* But from the very nature of things, such averments are inapplicable in the case of unknown owners, and Chief Judge Church comments upon this in his opinion in *Sandford* v. *White, supra.* That there were owners unknown at the date of the order cannot be gainsaid. The plaintiffs and the defendants attacking the decree aver that their ancestors and predecessors were owners of undivided interests. The attorney for the plaintiffs made affidavit that he was familiar with the title, he had necessarily searched it, he had discovered all the owners save those entitled to two and one-sixth shares out of the twenty shares into which the ownership was divided. He made oath that he did not know who the parties were who were entitled to these outstanding interests. What more could he say? These parties did not know themselves that they had any interest in the property. The old deeds on which they base their claims were locked up in secret drawers in forgotten desks and boxes, and did not reach the light of day for more than a quarter of a century thereafter. I cannot see what Mr. Stanbrough, the attorney for the plaintiffs, could have done, or ascertained, beyond what he set forth in the affidavit. But it is said that during the hearing before the referee he should have perceived from some of the deeds offered in evidence that Mr. Conklin had conveyed interests in the premises for which he had no record title. But if this were true, it does not affect the jurisdiction of the court to grant the order of publication, which, of

course, antedated the trial before the referee. It is inconceivable that if these parties whose descendants and grantees now attack the former partition action, had any title, or thought they had any title to Great South Beach, they would not have asserted it. They lived in the vicinity. The proceedings in the partition suit of *Greene* v. *Sammis* were well known. But, to my mind, this does not go to the crucial question of jurisdiction. I must hold that the order of publication was properly made.

The form of the notice is criticised. It was addressed to " the unknown owners and all persons interested in the premises described in the complaint and herein above referred to or any part thereof." The description contained in the notice was not as full as that contained in the complaint. But it described the land as " lands in the County of Suffolk, known as the Great South Beach." Counsel comment on the fact that no boundaries were given in the notice, and that the " Great South Beach," as a whole, was not affected by the partition suit, but only part of it.

I think that taking into consideration the physical situation, the description was sufficiently accurate. It covered too much, rather than too little. But a property owner of undivided interests in land in a part of Great South Beach was certainly advised by the notice that the pending litigation affected his property. Reference to the complaint would give him boundaries.

The notice was directed to be published and was published in the state paper in Albany, and in a local paper for three weeks. This was the precise requirement of the statute, as amended by section 3 of chapter 277, Laws of 1842. That act specifically provided in section 4 that no different notice should be required. The Court of Appeals in *Sandford* v. *White, supra,* expressly held that three weeks' publication was all

that was required. Counsel say that the question was not before the court in that case. I do not agree to this. I think the attorney for the plaintiff was justified in following the procedure pointed out in the case cited.

Counsel cite the decision of the court in *Gleason* v. *Union Free School District,* at the Suffolk, May, 1916, Trial Term, in which the court held, following *Kennedy* v. *Lamb, supra,* that an affidavit upon which an order of publication of summons was made was insufficient to confer jurisdiction. But this case is different. There we were dealing with a known owner. The procedure was under a different statute with different requirements. It is entirely reasonable and proper to compel an affiant to disclose what steps he took to ascertain the whereabouts of a known defendant, and the present statute so directs. But once he concede that an owner is unknown, and that must be conceded in the case at bar, what possible diligence could be used or exercised?

I do not think that the court should now, forty years after the partition decree in *Greene* v. *Sammis,* upon the faith of which this entire territory has been developed, declare the partition of no avail, upon the ground urged that the statute under which the court proceeded was unconstitutional as denying due process of law to the plaintiffs and the other defendants attacking the title.

It follows from these considerations that the defendants Atlantic Beach Realty Company and the defendants Norton and Sammis' executors have made out a good defense to the complaint of the plaintiffs and their co-defendants, and the complaint must, therefore, be dismissed.

Complaint dismissed.